# In the United States Court of Federal Claims

No. 19-1019C
(Filed Under Seal: May 20, 2021)
(Reissued: June 4, 2021)*
**FOR PUBLICATION**

```
****************************************
PLAINTIFF NO. 1,                       *
                                       *
            Plaintiff,                 *
                                       *
v.                                     *
                                       *
THE UNITED STATES,                     *
                                       *
            Defendant.                 *
                                       *
****************************************
```

*Daniel M. Rosenthal*, James & Hoffman, P.C., Washington, D.C., for Plaintiff. With him on briefs were *Brita Zacek*, James & Hoffman, P.C., Washington, D.C., as well as *Linda Lipsett*, Bernstein & Lipsett, P.C., Washington, D.C.

*Alison S. Vicks*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant, United States. With her on briefs were *Joseph H. Hunt*, Assistant Attorney General, *Ethan P. Davis*, Acting Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as *Ryan E. Bull*, *Brian T. Critz*, and *Kristin B. McGrory*, United States Department of Defense, Alexandria, Virginia.

## OPINION AND ORDER

Plaintiff[1] — a staff officer with the Department of Defense ("DOD") — has sued for backpay under the Fair Labor Standards Act ("FLSA"). He alleges that he is entitled to compensation for time he spent outside working hours completing the

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on May 20, 2021, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by June 3, 2021. The parties notified the court via email on June 3 that there were no proposed redactions. The Court hereby releases publicly the opinion and order of May 20 in full.

[1] This case is subject to a protective order to avoid disclosing Plaintiff's identity or job description. Protective Order (ECF 14).

DOD Counterintelligence Agent Course ("DCAC"). Plaintiff brings claims under FLSA regulations promulgated by the Department of Labor ("DOL"), *see* 29 C.F.R. § 785.27, and by the Office of Personnel Management ("OPM"), *see* 5 C.F.R. § 551.423(a)(2). *See* Am. Compl. ¶¶ 31–45 (ECF 36) (Counts I and II, respectively).[2] The Government's motion to dismiss under RCFC 12(b)(6) is ripe for decision.[3]

The Court holds that Plaintiff has alleged work under FLSA and — although the applicable legal standard is still in doubt — has adequately pleaded a claim under both DOL and OPM regulations. Plaintiff has also established a likely conflict between OPM and DOL regulations that would render the OPM regulations invalid under the test set forth in *Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003). Accordingly, Defendant's motion to dismiss is **DENIED**.

## BACKGROUND

The Amended Complaint alleges the following facts. Plaintiff has been employed at DOD since 2017 as an FLSA non-exempt staff officer. Am. Compl. ¶¶ 1, 7. Before then, he spent many years working in the intelligence field. *Id*. ¶ 18.

From January 4, 2018 through March 2, 2018, Plaintiff attended the DCAC. *Id*. ¶ 8. The purpose of the DCAC was "to provide graduates with the knowledge necessary to conduct the diverse duties of a defense counterintelligence agent." *Id*. ¶ 9. Successful attendees received a badge and credentials "permit[ing] them to more effectively conduct meetings and activities in support of missions." *Id*. ¶ 10. Plaintiff believed that if he did not pass the DCAC, he would eventually be removed from his position as a staff officer. *Id*. ¶ 12.

The course not only involved in-person training sessions, but required attendees to "study materials, write reports, prepare presentations, prepare for and perform interviews, and perform model problems." *Id*. ¶ 14. Those aspects of the DCAC were all "integral" to the course and "necessary" to complete it successfully. *Id*. ¶ 15. The coursework was "mandatory, supervised, and graded, and required to be performed inside of a secure access facility." *Id*. ¶ 16.

DOD informed DCAC attendees that the course "would require them to work late and on weekends." *Id*. ¶ 13. But DOD also informed attendees that it would not assist in tracking evening and weekend hours spent on coursework. *Id*. ¶ 17. Plaintiff alleges that he "regularly worked beyond 8 hours each day and/or 40 hours per week in order to complete the mandatory coursework." *Id*. ¶ 19.

Plaintiff was not compensated for all overtime hours he spent on the DCAC. *Id*. ¶ 21. DOD informed Plaintiff after he took the course that attendees may be entitled to compensation, *id*. ¶ 22, and ultimately paid 11 hours of overtime. *Id*. ¶ 23. Plaintiff spent "substantially" more time on the course, however, a fact he alleges

---

[2] Count III alleges entitlement to various other types of damages and compensation should Plaintiff prevail on the merits. *See* Am. Compl. ¶¶ 46–47.
[3] Def.'s Mot. to Dismiss (ECF 38); Pl.'s Resp. (ECF 55); Def.'s Reply (ECF 59).

DOD was aware of. *Id.* Subsequent DCAC participants were offered more than 11 hours of overtime. *Id.*

**DISCUSSION**

## I.   Legal Standard

### A.  Motion to Dismiss

When considering a motion to dismiss under RCFC 12(b)(6), the Court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the Plaintiff." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (applying *Iqbal* and *Twombly* to RCFC 12(b)(6)). A complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

### B.  The Fair Labor Standards Act

Under FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). That requirement applies not only to work directed by the employer, but work that the employer "suffer[s] or permit[s]." *Id.* § 203(g).

Originally FLSA exempted federal employees, who were covered instead by separate civil service overtime laws. *Billings*, 322 F.3d at 1333. When Congress later extended FLSA to federal employees, Pub. L. No. 93–259, 88 Stat. 55 (1974) (codified in relevant part at 29 U.S.C. §§ 203(e)(2)(A)), it preserved the parallel regulatory frameworks for federal and non-federal employees. DOL would continue to administer FLSA with respect to private, State, and local Government employees and employers. *See* 29 U.S.C. § 204(a); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944); *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267 (5th Cir. 2000); *Condo v. Sysco Corp.*, 1 F.3d 599, 604 (7th Cir. 1993). OPM now administers FLSA for most covered federal employees and employers. *See* 29 U.S.C. § 204(f) (providing that, with certain exceptions, "the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States"); *see also* 5 C.F.R. §§ 551.102, 551.103.

In response to concerns that extending FLSA to federal employees in that way would "confuse administration" of FLSA and the civil service laws, *Billings*, 322 F.3d at 1333, Congress charged OPM with administering FLSA "consisten[tly] with the meaning,   scope,   and   application   established   by   the   rulings,   regulations,

- 3 -

interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." *Billings*, 322 F.3d at 1333 (quoting H.R. Rep. No. 913, 1974 U.S.C.C.A.N. 2811, at 2837–38); *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985); *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 821 F.2d 761, 769, 770–71 (D.C. Cir. 1987); *see also* 5 C.F.R. § 551.101(c). When OPM's regulations are inconsistent with DOL's, a court must "determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334.[4]

Congress did not specify what constitutes "work" regulated by FLSA. *Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995); *see also Bull v. United States*, 68 Fed. Cl. 212, 221, *decision clarified*, 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007). The definitions instead emerge in regulatory interpretations and caselaw. For OPM-regulated federal employees, "[a]ll time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is 'hours of work.'" 5 C.F.R. § 551.401(a). Work "suffered or permitted" by an agency counts if "the employee's supervisor knows or has reason to believe that the work is being performed and has an opportunity to prevent the work from being performed." 5 C.F.R. § 551.104. *See Bull*, 68 Fed. Cl. at 222; *Abou-el-Seoud v. United States*, 136 Fed. Cl. 537, 570 (2018). That is consistent for present purposes with the test applied in other settings. *See* 29 C.F.R. §§ 785.7, 785.11; *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014).

Both DOL and OPM have promulgated regulations applicable to time spent in after-hours training. DOL's regulation provides that training time is work, except in circumstances covered by a four-factor test:

> Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
>
> (a) Attendance is outside of the employee's regular working hours;

---

[4] The rule of consistency between OPM and DOL regulations does not appear in FLSA or its statutory amendments. It comes from a House committee report. *See Riggs v. United States*, 21 Cl. Ct. 664, 681 (1990). The significance of committee reports for statutory interpretation is a matter of intense debate. *Compare* Robert A. Katzmann, *Judging Statutes* 38 (2014) (referring to committee reports as "authoritative" legislative history that should inform courts' interpretation of statutes); *with* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2122–24 (2016); *and* John F. Manning, *Why Does Congress Vote on Some Texts but Not Others?*, 51 Tulsa L. Rev. 559, 565–70 (2016). But there is no occasion to sort out that question here. *Billings* adopted the House committee's standard for the validity of OPM regulations, *Billings*, 322 F.3d at 1333–34, and that holding binds this Court even if the legislative history otherwise would not. *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005).

(b) Attendance is in fact voluntary;

(c) The course, lecture, or meeting is not directly related to the employee's job; and

(d) The employee does not perform any productive work during such attendance.

29 C.F.R. § 785.27.

Some of those terms are clarified by other DOL regulations. One explains voluntariness:

Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance.

29 C.F.R. § 785.28. Another explains what it means for training to be "directly related to the employee's job":

The training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or to a new or additional skill…. Where a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work.

29 C.F.R. § 785.29.

OPM's regulation takes a different approach. Unlike DOL, OPM provides that after-hours training time is *not* work unless certain conditions are met:

Time spent in training outside regular working hours shall be considered hours of work if:

(i) The employee is directed to participate in the training by his or her employing agency; and

(ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position.

5 C.F.R. § 551.423(a)(2). OPM defines its terms in ways that resemble DOL's:

(1) Directed to participate means that the training is required by the agency and the employee's performance or continued retention in his or her current position will be adversely affected by nonenrollment in such training. The fact that an agency pays for all or part of the expenses of training does not create an entitlement to overtime hours of work unless participation in the training is directed by the agency.

(2) Training "to improve the employee's performance ＊ ＊ ＊ of his or her current position" is distinguished from upward mobility training or developmental training to provide an employee the knowledge or skills needed for a subsequent position in the same career field.

5 C.F.R. § 551.423(b).

## II.  Analysis

Plaintiff has adequately pleaded claims within this Court's jurisdiction. He has alleged that his training was work under FLSA. He has also pleaded that the training was compensable under both DOL and OPM regulations. 29 C.F.R. § 785.27; 5 C.F.R. § 551.423(a)(2). But because the OPM regulations appear to be invalid, further proceedings will be needed to clarify the applicable law.

### A.  The Court has Jurisdiction to Hear Plaintiff's Claims

Before deciding a case, the Court must determine that it has jurisdiction over the matters before it. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Vargas v. United States*, 114 Fed. Cl. 226, 232 (2014). I conclude that jurisdiction exists.

#### 1.   Plaintiff's Claims are Within the Tucker Act's Grant of Jurisdiction

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded either upon … any Act of Congress or any regulation of an executive department, … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages…. [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)).

"[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States, separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). A plaintiff must point to a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)). A plaintiff must also make "a nonfrivolous assertion that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Id.*

FLSA is a money-mandating source of law. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014) ("As the courts have held … for three decades, since soon after the FLSA was extended to the federal government …, the Tucker Act applies to a claim against the government under the monetary-damages provision of

the FLSA.") (citation omitted). Plaintiff's non-frivolous allegation that he is an FLSA non-exempt government employee, entitled to overtime compensation withheld in violation of FLSA, places him within the class of individuals entitled to recover. This Court therefore has jurisdiction to adjudicate his claims.

> 2. *Plaintiff's Claims are Timely*

Statutes of limitations in this Court are uniquely jurisdictional, requiring *sua sponte* consideration. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA provides a general two-year statute of limitations for violations of overtime payment provisions, and a three-year limitations period for willful violations. 29 U.S.C. § 255. A claim accrues when "all the events which fix the Government's alleged liability have occurred and the Plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis omitted). "As a general rule, 'a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid.'" *Udvari v. United States*, 28 Fed. Cl. 137, 139 (1993) (quoting *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988)).

Plaintiff alleges that he began the DCAC on January 4, 2018 and completed it on March 2, 2018. Am. Compl. ¶ 8. He filed his complaint on July 7, 2019, less than two years later. *See* Compl. (ECF 1). His claims are therefore within the limitations period, regardless of whether the alleged violations were willful.

## B. Plaintiff has Pleaded Work under FLSA

Defendant's first argument for dismissal is that Plaintiff failed to plead that his participation in the DCAC constituted "work" for FLSA purposes. *See* Mot. at 10. As explained above, to plead that the DCAC qualified as work, Plaintiff must allege that it was (1) "for the benefit" of DOD, 5 C.F.R. § 551.401(a); (2) "controlled" by DOD, *id.*, and (3) "suffered or permitted" by DOD, meaning his supervisors "kn[ew] or ha[d] reason to believe that the work [was] being performed and ha[d] an opportunity to prevent the work from being performed," 5 C.F.R. § 551.104. *See also Bull*, 68 Fed. Cl. at 222; *Abou-el-Seoud*, 136 Fed. Cl. at 570. Although Plaintiff's allegations are not as detailed as they might ideally be, they satisfy those elements at the pleading stage.

First, Plaintiff has pleaded that the DCAC was "for the benefit of an agency." 5 C.F.R. § 551.401(a). "To benefit the employer, an activity need not be 'productive' — rather, it must be necessary to the accomplishment of the employee's principal duties to the employer." *Bull*, 68 Fed. Cl. at 223 (citing *Tenn. Coal*, 321 U.S. at 599). Plaintiff has alleged that the DCAC allowed him to more effectively perform his job as a staff officer. Am. Compl. ¶¶ 9–10. It is plausible that DOD benefits when staff officers can better perform their tasks. *See Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 657–60 (4th Cir. 2016) (reasoning that a casino was benefited by having a work force trained to its specifications on Maryland's first day of legalized gambling). Plaintiff also alleged his belief that he would have been removed from his staff officer position if he did not complete the DCAC. Am. Compl. ¶ 12. One plausible inference is that the DCAC was necessary to his principal

duties, and at the pleading stage, all inferences must be drawn in Plaintiff's favor. *Cary*, 552 F.3d at 1376.

Second, Plaintiff has pleaded that his DCAC time was controlled by DOD. 5 C.F.R. § 551.402(a); *see also Bull*, 68 Fed. Cl. at 222. Plaintiff alleges that the training had to be done "inside of a secure access facility," Am. Compl. ¶ 16, and that the activities he performed there were mandatory and necessary to complete the course, *id.* ¶¶ 15–16. Taking those allegations as true, DOD had the keys, and it let Plaintiff in to do specific tasks. That gives rise to a plausible inference that the coursework was "controlled or required." *See Bull*, 68 Fed. Cl. at 222.

Third, Plaintiff has pleaded that the DCAC coursework "was known or reasonably should have been known by the employer to have been performed." *Bull*, 68 Fed. Cl. at 222. Here, again, DOD informed trainees that the DCAC would require work at nights and on weekends, Am. Compl. ¶ 13, the coursework was both mandatory and necessary, *id.* ¶¶ 15–16, and it had to be completed in a secure access facility, *id.* ¶ 16. DOD presumably had knowledge of and control over who accessed the facility. It is reasonable to infer not only that DOD was aware of what training activities were being performed outside regular working hours, when, and by whom, but that DOD had the literal ability to "prevent" after-hours training by closing the secure facility. 5 C.F.R. § 551.104.

Defendant points out — *inter alia* — that the amended complaint does not address whether "each task performed" in connection with the DCAC satisfied those three criteria or whether DCAC instructors knew what Plaintiff was doing "on any specific day." Mot. at 10. Yet Defendant cites no authority requiring Plaintiff to plead at that level of particularity. Those objections — and other similar arguments — are better directed to the merits and to the quantum (if any) of Plaintiff's eventual damages. For present purposes, Plaintiff's pleadings are adequate.

## C. Plaintiff has Pleaded a Claim Under the DOL Regulations (Count I)

Count I alleges that DOD failed to properly compensate Plaintiff for overtime pay under FLSA, as interpreted by DOL's regulations. *See* 29 C.F.R. § 785.27. As a federal employee, Plaintiff is presumptively covered by OPM overtime regulations, not DOL regulations. *Abou-el-Seoud*, 136 Fed. Cl. at 563 n.24. Plaintiff argues that the OPM regulations are invalid because they conflict with DOL regulations, and that the DOL regulations therefore apply instead. Resp. at 21–27. I agree that OPM's regulations appear to be invalid, at least at this stage of the case, and that — if DOL standards apply — Plaintiff has adequately pleaded a claim under DOL regulations. Nonetheless, the correct legal standard will require clarification before the Court can resolve the merits.

### 1. The OPM Regulation Appears to be Invalid

As previously noted, OPM's regulations implementing FLSA are supposed to be consistent with DOL's. *Billings*, 322 F.3d at 1333. If OPM's regulations are not consistent with DOL's, the question is "whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and

the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Id.* at 1334. If inconsistent OPM regulations do not meet that test, they are invalid. *See Am. Fed'n of Gov't Emps.*, 821 F.2d at 771.

Defendant objects that Plaintiff's pleadings lack an express challenge to the validity of OPM regulations. Mot. at 12–13. But no such express challenge is required. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)) (citation omitted); *see also* 5 Fed. Prac. & Proc. Civ. § 1219 n.8 (3d ed.). Here, Plaintiff has identified a claim based on DOL regulations. Defendant moved to dismiss on the ground that those regulations are inapplicable, Plaintiff opposed, and Defendant filed a reply. Nothing further is required to bring the issue to the Court's attention.

Turning to the DOL and OPM regulations, I first look to the text of the relevant regulations to determine whether a conflict exists. *See Angelo v. United States*, 57 Fed. Cl. 100, 114 (2003). The two regulations are as follows:

| DOL: 29 C.F.R. § 785.27[5] | OPM: 5 C.F.R. § 551.423(a)(2) |
|---|---|
| Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:<br><br>(a) Attendance is outside of the employee's regular working hours;<br><br>(b) Attendance is in fact voluntary;<br><br>(c) The course, lecture, or meeting is not directly related to the employee's job; and<br><br>(d) The employee does not perform any productive work during such attendance. | (2) Time spent in training outside regular working hours shall be considered hours of work if:<br><br>(i) The employee is directed to participate in the training by his or her employing agency; and<br><br>(ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position. |

---

[5] Defendant claims that the proper DOL comparator is not 29 C.F.R. § 785.27, but 29 C.F.R. § 553.226. Reply at 2. That misunderstands the regulatory structure. DOL and OPM set out general rules for training time in Section 785.27 and Section 551.423, respectively. Section 553.226 creates an exception to DOL's rule for certain training for State and local government employees. Contrary to Defendant's interpretation, it is not a more specific provision that displaces Section 785.27. *See* 29 C.F.R. § 553.226(a) (noting that "general rules for determining the compensability of training time under the FLSA are set forth in" Section 785.27 and following provisions); *see also Misewicz v. City of Memphis,*

At least two material inconsistencies are evident. For one, OPM regulations shift the burden of proving that training is compensable work from the employer to the employee. DOL's regulation presumes that training time *is* work, but "need not be counted as work" upon proof of certain criteria. 29 C.F.R. § 785.27. If *one* criterion in the regulation's test is unmet, training time must be classified as work. OPM's regulation includes similar factors, but in the opposite way. It presumes that training time is *not* work, but "shall be counted as work" if the criteria are all proven. 5 C.F.R. § 551.423(a)(2). To show that their training time is compensable work, employees covered by OPM must affirmatively prove *each* element.

The difference is even starker when one examines how the elements of the two regulations interact. Both regulations look to whether the training is voluntary. *See* 5 C.F.R. § 551.423(a)(2)(i); 29 C.F.R. § 785.27(b). Both also look to whether the training is intended to improve the employee's performance in his current job. *See* 5 C.F.R. § 551.423(a)(2)(ii); 29 C.F.R. § 785.27(c); *see also* 29 C.F.R. § 785.29 ("The training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or to a new or additional skill."). An employee covered by DOL regulations can obtain compensation if the training was required *or* if it was designed to improve his job performance. An employee covered by OPM regulations must prove that it was required *and* that it was designed to improve his performance. The regulations are therefore inconsistent. *See Am. Fed'n of Gov't Emps.*, 821 F.2d at 771 (holding OPM regulations were inconsistent with DOL's because they shifted a presumption from the employer to the employee).

A second inconsistency intrudes as well. As discussed below, Defendant seeks to dismiss Plaintiff's OPM regulation claims on the ground that the DCAC is "entry level training," non-compensable under 5 C.F.R. § 551.423(a)(3). That regulation — an exception for training that would otherwise be compensable work — provides that generally "[t]ime spent in … entry level training … outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods[.]" No similarly broad exception for entry-level training seems to exist in DOL regulations. *See* Reply at 3 (proposing comparisons between 5 C.F.R. § 551.423(a)(3) and DOL regulations). Instead, DOL has exceptions for "bona fide apprenticeship programs," *see* 29 C.F.R. § 785.32, and outside-working-hours training by State and local government employees when required by law to obtain a certification, *see* 29 C.F.R. § 553.226(b). DOL's exceptions are distinctly narrower

---

*Tenn.*, 771 F.3d 332, 341 (6th Cir. 2014) ("[W]e hold that the plain text of § 553.226, its legislative and regulatory history, and DOL Opinion Letters on § 553.226 all indicate that this section provides a stand-alone exception to the general rule that training time is compensable."). As discussed below, OPM has exceptions analogous to Section 553.226.

Comparing DOL's Section 553.226 exception and OPM's Section 551.423 general rule would be misleading because the two provisions do not have analogous roles in the agencies' regulatory systems. Defendant's lengthy discussion thus adds up to little because it is apples-to-oranges. An apples-to-apples comparison, rather, calls for first matching up the two agencies' general rules on training time, then doing the same with analogous exceptions.

than the OPM exception Defendant asserts as a basis for dismissal. *See Am. Fed'n of Gov't Emps.*, 821 F.2d at 771 (holding that another OPM regulation was inconsistent with DOL's because it defined a FLSA exemption more broadly).

In at least two places relevant to this case, in short, OPM's regulations diverge from DOL's in ways that are unfriendly to federal employees. That inconsistency calls for the analysis required by *Billings*. *See* 322 F.3d at 1333.

OPM's interpretations of FLSA are reasonable. Although FLSA's applicability to training is long-established, *see Walling v. Portland Terminal Co.*, 330 U.S. 148, 151 (1947), the statute is "silent or ambiguous" on the exact test. *Billings*, 322 F.3d at 1333. In the abstract, at least, there is no basis to question OPM's stricter approach. The problem, rather, is that Defendant has provided no reason why OPM has diverged from DOL, let alone any explanation for why the divergence "is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Id.* at 1334. On the contrary, OPM stated when the relevant regulations were promulgated that it intended for them to be consistent with DOL's. *See* Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85660 (Dec. 30, 1980).[6] As a result, in light of the noted inconsistencies, OPM appears to have arbitrarily violated the command to hew to DOL's interpretations. *Billings*, 322 F.3d at 1333.

That conclusion is unaffected by this Court's previous applications of OPM's training overtime regulations. *See, e.g., Almanza v. United States*, 127 Fed. Cl. 521, 528 (2016), *aff'd*, 935 F.3d 1332 (Fed. Cir. 2019); *Bull*, 68 Fed. Cl. at 255–56. Neither case resolved a *Billings* challenge to the regulations' validity.[7] Nor is there any ruling from the Federal Circuit that the OPM training overtime regulations are valid. *See, e.g., Crusan v. United States*, 86 Fed. Cl. 415, 428, *aff'd sub nom. Federico v. United States*, 374 F. App'x 15 (Fed. Cir. 2009), *and aff'd*, 374 F. App'x 18 (Fed. Cir. 2009) (declining to apply *Billings* where clear circuit precedent addressed "driving time" regulations).

Defendant might seek to justify OPM's course on factual grounds later in this case. I express no position on whether such an effort would be procedurally proper, or on whether it would prevail. At this stage of the case, it appears that OPM's training time regulations — 5 C.F.R. § 551.423(a)(2)–(3) — are invalid.

### 2. *Plaintiff has Pleaded Compensable Work Under DOL Regulations*

Plaintiff assumes that if OPM's regulations are invalid, the Court should simply apply DOL's regulations instead. Resp. at 27 & n.14.[8] That is surely mistaken.

---

[6] DOL's regulation has not changed since OPM's was promulgated. 29 C.F.R. § 785.27 (1980).

[7] The Federal Circuit found that a *Billings* challenge to 5 C.F.R. § 551.423(a) in *Almanza* was waived where the challenge was first raised on appeal. *Almanza*, 935 F.3d at 1337 (citing *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 n.1 (Fed. Cir. 2018)).

[8] Defendant may adopt that assumption as well. *See* Mot. at 12 ("[T]he Court may consider applying DOL's regulation instead of OPM's[.]"); Reply at 2 ("[P]laintiff is a Federal employee whose entitlement

When it comes to federal workers like Plaintiff, Congress has granted FLSA administrative authority to OPM, not DOL. 29 U.S.C. § 204(f). If OPM's regulations are invalid, it does not follow that the Court should automatically apply a different set of regulations, covering a different set of workers, promulgated by a different agency with a different scope of authority that has been expressly displaced in this case by statute. *See Adams v. United States*, 40 Fed. Cl. 303, 306–07 (1998) ("Caution dictates against simply importing DoL-created standards into the federal sector without any conscious rulemaking at either DoL or OPM."). Besides, DOL's regulations in this area are not binding. They only "provide a 'practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply it.'" 29 C.F.R. § 785.2 (quoting *Skidmore*, 323 U.S. at 138). Although cases addressing federal employees treat DOL's regulation as persuasive authority, *see Akpeneye v. United States*, 990 F.3d 1373, 1382 (Fed. Cir. 2021) (applying *Skidmore* deference and ultimately rejecting a DOL interpretation), identifying the proper legal standards in this case will require further development. But whatever weight DOL's regulations may deserve, I address Plaintiff's claims under those regulations. While the allegations are somewhat thin, they are adequate for the pleading stage.

Under the DOL regulation, 29 C.F.R. § 785.27, training time is compensable unless four elements are met: (1) The training must be "outside of the employee's regular working hours"; (2) attendance must be "in fact voluntary"; (3) the training must not be "directly related to the employee's job," as defined by 29 C.F.R. § 785.29; and (4) the employee must not "perform any productive work" while in training. There appears to be no dispute, at this stage, that the portion of the DCAC training for which Plaintiff seeks compensation took place outside working hours and was not itself productive for DOD. Count I instead hinges on Plaintiff's allegation that his after-hours training time was not voluntary and was directly related to his job.

First, as to voluntariness, DOL regulations provide that training attendance is not voluntary when the employee "is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." 29 C.F.R. § 785.28. Plaintiff alleges that he believed he would be removed from his role if he failed to take or pass the DCAC. Am. Compl. ¶ 12. It is reasonable to infer that he had a basis for that belief. He alleges that he was informed that the DCAC would necessitate after-hours and weekend work. *Id.* ¶ 13. All coursework was mandatory, and after-hours work was necessary to complete the course. *Id.* ¶¶ 15–16. Taken together, those allegations suggest a plausible inference that after-hours DCAC coursework was essential for Plaintiff to keep his job. Plaintiff has therefore pleaded adequately that attendance at the DCAC was involuntary within the meaning of DOL regulations.

Second, as to the relationship between the DCAC and Plaintiff's work, DOL has provided that training is "directly related" to an employee's job when it is

---

to overtime pay is governed by OPM's regulations, not DOL's, unless OPM's regulations are determined to be invalid.").

"designed to make the employee handle his job more effectively as distinguished from training him for another job." 29 C.F.R. § 785.29. It is plausible that the DCAC served just such a purpose. Plaintiff has pleaded that the DCAC allowed him to "gain the knowledge necessary to conduct the diverse duties of a defense counterintelligence agent." Am. Compl. ¶ 9. Staff officers who complete the DCAC "receive a badge and credentials, which permit them to more effectively conduct meetings and activities in support of missions." *Id*. ¶ 10. Plaintiff, again, alleged his belief that he would be removed from his job if he did not take the course, *id*. ¶ 12, that the DCAC would require after hours and weekend work, *id*. ¶ 13, and that all the work involved in the DCAC was necessary, *id*. ¶¶ 15–16. The thrust of those allegations is that the after-hours DCAC coursework taught Plaintiff how to do his job better. He has therefore pleaded that the training was directly related to the position he held at the time.

Defendant's responses — like most of the authorities Defendant relies on — involve the merits, not the adequacy of Plaintiff's pleadings. Defendant argues, for example, that Plaintiff insufficiently alleged that after-hours and weekend time, as opposed to the DCAC in general, was involuntary or directly related to Plaintiff's job. Mot. at 13–14. Defendant does not clearly explain its distinction between the DCAC and the required coursework, especially given Plaintiff's allegation — which must be taken as true — that the after-hours coursework was itself mandatory and necessary to complete the course. *See* Am. Compl. ¶¶ 12–13, 15–16. Questions about what *aspects* of the DCAC were after-hours, involuntary, and directly related to Plaintiff's job go to the merits and to the amount of damages.

Defendant likewise argues that the DCAC taught Plaintiff *new* skills necessary to do the job he was hired for. Mot. at 14–15; Reply at 6–8 (citing *Bienkowski v. Ne. Univ.*, 285 F.3d 138 (1st Cir. 2002), and *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904 (6th Cir. 2002)). That may ultimately be correct on the merits, but at the pleading stage all reasonable inferences must be drawn in Plaintiff's favor, *see, e.g.*, *Cary*, 552 F.3d at 1376, and Plaintiff has plausibly alleged that the DCAC was at least partly directed at improving his performance in the job he held. *See* Am. Compl. ¶¶ 9, 12. Defendant raises other objections along similar lines, but none justifies dismissal at this stage.

### D. Plaintiff has Pleaded a Claim Under OPM Regulations (Count II)

Count II alleges that DOD failed to properly compensate Plaintiff for overtime pay under FLSA, as implemented by OPM regulation. *See* 5 C.F.R. § 551.423(a)(2). As previously discussed, the OPM regulations appear to be invalid. Because the parties have not directly briefed how Count II should be disposed of if the OPM regulations are invalid, I address Count II for the sake of completeness, and conclude that Plaintiff has adequately alleged that claim as well.

The OPM regulation, again, provides that "time spent in training outside regular working hours shall be considered hours of work if: (i) The employee is directed to participate in the training by his or her employing agency; and (ii) The purpose of the training is to improve the employee's performance of the duties and

- 13 -

responsibilities of his or her current position." *Id.* OPM has defined "directed to participate" and training "to improve the employee's performance" in much the same way that DOL defined voluntariness and the relationship or training to the employee's job. 5 C.F.R. § 551.423(b)(1)–(2).

Analysis of Plaintiff's pleadings as to the OPM regulation therefore resembles the foregoing analysis of Plaintiff's claims under the DOL regulation. Unlike the DOL regulation, the OPM regulation requires Plaintiff to plead *both* elements (involuntariness and a relationship to his current position) to set out a claim for uncompensated training time. But as set out above, Plaintiff has done so. Plaintiff has adequately pleaded that "continued retention in his … current position" would have been "adversely affected by nonenrollment in" the DCAC, 5 C.F.R. § 551.423(b)(1), and was therefore "directed to participate." He has also adequately pleaded that the DCAC was intended "to improve [his] performance [in his] current position." 5 C.F.R. § 551.423(a)(2)(ii). Defendant's objections to the sufficiency of the pleadings in fact go to the merits or the quantification of damages.

Defendant's principal legal response is that the DCAC is an "entry-level" training program, and that time spent in the course therefore is not compensable.[9] Mot. at 15; 5 C.F.R. § 551.423(a)(3). The relevant regulation provides as follows:

> Time spent in apprenticeship or other entry-level training, or internship or other career related work study training, or training under the Veterans Recruitment Act (5 CFR part 307) outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods, except as provided by § 410.402(b) of this chapter and paragraphs (f) and (g) of § 551.401.

5 C.F.R. § 551.423(a)(3). Plaintiff's claims should not be dismissed on that ground unless the only plausible inference from the pleadings is that the DCAC is an entry-level training. *See Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 139 (2d Cir. 2013) (dismissing where "[e]ven reading the complaints in the light most favorable to Plaintiffs … only one plausible inference" was possible); *see also, e.g.*, *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1192 (W.D. Wash. 2015) ("There may be other plausible inferences, but that makes no difference on a motion to dismiss."). That is not the case here.

Absent a regulatory definition, words are afforded their plain and ordinary meanings. *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005)

---

[9] Other objections are further afield. Defendant argues at length that Plaintiff's claims should be dismissed under a DOL regulation providing that "[p]olice officers or employees in fire protection activities" who live at a job training site can only obtain compensation for time they spend "in class or at a training session," not time they may spend on "personal pursuits." Reply at 4–5 (citing 29 C.F.R. § 553.226(c)). Plaintiff is not a police officer or a fireman, does not allege that he lives at the DCAC site, and does not allege that he should be compensated for personal time. Defendant relies on another section of the same regulation addressing training for employees of "State and local governments," Reply at 5–6 (citing 29 C.F.R. § 553.226(b)), which is also textually inapplicable. Nor is there any textual basis to read "similar carve-outs" into the OPM regulations. *Id.* at 8.

(citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15 (1945)). Dictionaries suggest that "entry-level" training refers to training for new employees with little experience in the field.[10] The dictionary definitions are consistent with the term's use in the regulation, where "entry-level" accompanies the terms "apprenticeship," "internship," and "work study training" in the regulation. 5 C.F.R. § 551.423(a)(3); *see United States v. Williams*, 553 U.S. 285, 294 (2008) (explaining that meanings of terms "are narrowed by the commonsense canon of *noscitur a sociis* — which counsels that a word is given more precise content by the neighboring words with which it is associated").

It is certainly conceivable that the DCAC falls into that definition. Mot. at 16 (arguing that the DCAC "is an entry-level course for anyone, no matter how long they have been in the counterintelligence field, to specifically become a defense counterintelligence agent for the United States"). But Plaintiff's pleadings suggest the contrary inference just as easily. Plaintiff alleges that he had been employed in his staff officer position since 2017, Am. Compl. ¶ 7, and had many years of intelligence experience before beginning as a staff officer. *Id.* ¶ 18. Unlike in *Stevens v. Holder*, where the plaintiffs alleged that "they were accepted into an FBI training program as new agents employed in a probationary capacity" and were therefore held to be entry-level employees, 966 F. Supp. 2d 622, 643 (E.D. Va. 2013), Plaintiff's pleadings can be taken to mean that the DCAC is more advanced. The parties will presumably develop a record on the content and purpose of the DCAC, as well as the entry and retention requirements for Plaintiff's job. Even to identify those issues, though, illustrates that they are factual questions, not to be resolved on the pleadings. The motion to dismiss Count II is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF 38) is **DENIED**.

The parties shall submit a joint status report no later than **June 21, 2021** proposing further proceedings. As discussed above, although Plaintiff has adequately pleaded claims under both OPM and DOL regulations, it appears that the former regulations are invalid, and the latter regulations lack the force of law in this case. Because the parties have not briefed the subject, the report should address how the Court should proceed given the uncertainty over the governing law. The parties shall also address completion of briefing on Plaintiff's motion to certify a class (ECF 26).

---

[10]   *See* Entry-level, American Heritage Dictionary of the English Language, https://www.ahdictionary.com/word/search.html?q=entry-level (last visited May 20, 2021) ("1. Appropriate for or one who is new to something, such as a job or activity," "2. Of or relating to a job or position that requires little experience and is low in a hierarchy," or "3. Appropriate for a beginner; basic."); Entry-level, Oxford English Dictionary, https://www.oed.com/view/Entry/249639?rskey=QXRd7g&result=1&isAdvanced=false#eid (last visited May 20, 2021) ("Designating a job, academic course, etc., occupying the lowest level in a hierarchy and available to or suitable for people with relatively little relevant experience; of or relating to such a job, course, etc.").

Pursuant to the Court's September 30, 2019 Protective Order (ECF 14), this Opinion has been issued under seal. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **June 3, 2021**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

        **IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge
